IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

CHRISTOPHER THOMAS, *et al.*,

    Plaintiff,

v.                                         Case No.: GJH-17-1739

STATE OF MARYLAND, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Christopher Thomas and Alexandra Curbelo ("Plaintiffs") allege constitutional and state law tort violations against a number of entities within the State of Maryland, including Anne Arundel County, Prince George's County, Howard County, associated police departments, county executives, police chiefs, and 28 individual police officers (collectively, "Defendants").[1] The Complaint arises out of a purported high-speed pursuit on Route 295 that ended in Plaintiffs' arrest. ECF No. 2. Presently pending before the Court are motions to dismiss from defendants Anne Arundel County, ECF Nos. 30, 31, 35, Howard County, ECF No. 29, Prince George's County, ECF No. 36, and the State of Maryland, ECF No. 49, and the State of Maryland's Motion to Strike Plaintiff's Opposition, ECF No. 56. No hearing is necessary to adjudicate the motions. Loc. R. 105.6 (D. Md. 2016). For the following reasons, the State of Maryland's

---

[1] Following submission of the motions to dismiss by the County Defendants, Plaintiffs conceded to dismissal of Prince George's County, the Howard County Police Department, the Anne Arundel County Police Department, Howard County Executive Allan Kittleman, and Anne Arundel County Executive Steven Schuh. ECF No. 49 at 5. As such, these defendants are dismissed and the Court need not consider Defendants' motions in support thereof.

motions are granted, Anne Arundel and Howard Counties' motions are granted, in part, and denied, in part, and Prince George's County's motion is denied as moot.

I. BACKGROUND

A. Factual Background[2]

On June 3, 2014, police officers employed by the State of Maryland, Anne Arundel County, and/or Howard County initiated pursuit of a speeding vehicle on Route 295, going through Prince George's County, Anne Arundel County, and ultimately stopping in Howard County, Maryland. ECF No. 2 ¶¶ 36–37. Plaintiff Thomas operated the vehicle and Plaintiff Curbelo was a passenger. Upon stopping the vehicle, and in compliance with police orders, Thomas exited the vehicle and laid face down on the ground in anticipation of arrest. Id. ¶ 39. While on the ground, an unidentified police officer placed Thomas' hands behind his back, Id. ¶ 40, and additional officers punched and kicked Thomas repeatedly as he lay helpless on the ground. Id. ¶ 41. Prior to Thomas being handcuffed and arrested, but while on the ground and subdued, Officer Jeffery Rothenbecker instructed a police canine to maul Thomas. Id. ¶¶ 42–43, 46. Thereafter, Officer Jeremy Duncan employed a Taser gun on Thomas. Id. ¶ 44. Plaintiffs maintain that at all times following the police stop, Thomas was acting in full compliance with police orders, "demonstrated no acts of restraint or unwillingness to cooperate with police," and made no movements that could cause a reasonable officer to feel threatened. Id. ¶ 45. Following Thomas' arrest, Plaintiff Curbelo exited the vehicle from the front passenger door in compliance with police orders. Id. ¶ 49. Upon exit, an unidentified police officer grabbed Curbelo and "hurled her body over a guardrail directly adjacent to the vehicle." Id. ¶ 49.

Once in custody, Plaintiffs were transported to the Anne Arundel County Medical Center for treatment. Id. ¶ 51. Plaintiffs note that in response to a question from a nurse as to why

---

[2] Unless stated otherwise, the facts are taken from the Complaint and assumed to be true.

2

Thomas "was beaten so badly," an unidentified officer commented that "he shouldn't have ran." *Id.* ¶ 52. Further, Plaintiffs allege that while Thomas was receiving treatment, an unidentified officer was relieved of his duties by a superior, whereby the superior officer stated that he would "take care of the police report" and that the relieved officer would not need "to worry about it." *Id.* ¶¶ 56–57.

As a result of the arrest, Thomas suffered bruising to his body and face and lacerations inflicted by the police canine, including a large gash on his lower back. *Id.* ¶ 61. In addition, Plaintiffs allege that while in custody, Thomas received inadequate medical treatment, resulting in permanent injuries including sciatic nerve damage and scarring. *Id.* ¶¶ 53–55, 61. Plaintiffs also allege that Thomas continues to suffer from severe emotional distress, including "major depression, trouble concentrating, recurring nightmares, distress as a result of permanent injuries to his person, and extreme anxiety." *Id.* ¶ 62. Curbelo's physical injuries included bruises and cuts to her body, and she continues to suffer from severe emotional distress, including "major depression, crying spells, poor concentration, sleep disturbance, appetite disturbance, poor energy, and fleeing suicidal ideations." *Id.* ¶¶ 59, 60.

### B. Procedural Background

Plaintiffs filed the instant action in the Circuit Court for Prince George's County on May 26, 2017 and bring the following claims: Assault (Count I); Battery (Count II); Excessive Force, 42 U.S.C. § 1983 (Count III); Negligence (Count IV); Conspiracy to Interfere with Civil Rights, 42 U.S.C. § 1985(3) (Count V); *Monell* Allegations, 42 U.S.C. § 1983 (Count VI); Violation of Article 24 of the Maryland Declaration of Rights (Count VII); Equal Protection, 42 U.S.C. § 1983 (Count VIII); Negligent Supervision and Training (Count IX); and Intentional Infliction of Emotional Distress (Count X). ECF No. 2.

Prior to filing the Complaint, Plaintiffs sent a Notice of Claim to the County Defendants on December 1, 2014. *Id.* ¶¶ 31-33. Plaintiffs sent a Notice of Claim to the Maryland State Treasurer in accordance with § 12-107(a) of the Maryland Tort Claims Act ("MTCA") on June 1, 2015. *Id.* ¶ 34. Following removal to this Court, Defendant Rothenbecker filed an answer, ECF No. 32, and Defendants Howard County, Anne Arundel County, and Prince George's County filed motions to dismiss on behalf of the counties, county executives, police chiefs, police departments, and individual police officers. *See* ECF Nos. 29, 30, 31, 35, 36.[3] On October 10, 2017, the Court denied Plaintiffs' Combined Motion to Amend the Complaint and Remand to State Court, ECF No. 39. *See* ECF No. 44. Thereafter, the State of Maryland filed a Motion to Dismiss, ECF No. 45, and Plaintiffs filed responses to all motions to dismiss by the County Defendants, ECF No. 49, and the State of Maryland, ECF No. 51. Finally, the State of Maryland moved to strike Plaintiff's Response to its Motion to Dismiss. ECF No. 56.

## II. STANDARD OF REVIEW

Defendants may "test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6)." *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 660 (D. Md. 2011) (citing *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). Motions to dismiss for failure to state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Prelich*, 813 F. Supp. 2d at 660 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is

---

[3] While Rothenbecker, an Anne Arundel County police officer, sets forth affirmative defenses similar to arguments presented in the various motions to dismiss, Defendant Anne Arundel County indicates that Rothenbecker does not join its Motion to Dismiss at this time. ECF No. 35-1 at 5 n. 7. On December 4, 2017, Duncan filed an Answer with similar affirmative defenses but does not join any of the motions to dismiss presently pending before the Court. ECF No. 61

4

plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of Plaintiffs' claims, the Court accepts factual allegations in the complaint as true and construes the factual allegations in the light most favorable to the Plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court should not grant a motion to dismiss for failure to state a claim for relief unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

## III. DISCUSSION

Plaintiffs appear to bring each individual state tort and constitutional claim against all Defendants collectively, irrespective of the individual defendant's status as a municipality, state entity, supervisor, or individual police officer. Because certain claims are dependent upon the status of the individual defendant, the Court will first address claims that do not state a claim for relief irrespective of the individual defendant and will then evaluate the remaining claims based on the status of the individual defendant.

### A. Assault (Count I)

In Maryland, assault claims are subject to a one year statute of limitations. *See* Md. Code, Cts. & Jud. Proc., § 5-105. Accordingly, Plaintiffs' assault claim expired on or about June 4, 2015, almost two years prior to filing the instant action. Plaintiffs acknowledge that Curbelo's claim is time barred but argue that the Court should toll Thomas' limitations period because he

5

was incarcerated in Connecticut during that time. *See* ECF No. 49 at 13.[4] To receive equitable tolling, Plaintiffs bear the burden of proving that Thomas has diligently pursued his rights and some extraordinary circumstance beyond his control stood in his way, preventing timely filing. *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). However, no such extraordinary circumstances exist. *See, e.g., Downes v. Carroll*, 348 F. Supp. 2d 296, 303 (D. Del. 2004) (noting that incarceration in another state is not an extraordinary circumstance justifying equitable tolling for petition under 28 U.S.C. § 2254). Plaintiffs fail to show that Thomas' incarceration, alone, qualifies as an extraordinary circumstance justifying equitable tolling or that Thomas diligently pursued his claim while incarcerated or upon release. Moreover, Plaintiffs' counsel represented Thomas immediately following his arrest and pursued Plaintiffs' state law tort claims against the County Defendants while Thomas was incarcerated. *See* ECF No. 2 ¶¶ 31–33. As such, Plaintiffs do not establish that Thomas diligently pursued his claim. Plaintiffs' assault claim is time barred and therefore dismissed.

**B. Intentional Infliction of Emotional Distress (Count X)**

To state a common law claim for Intentional Infliction of Emotional Distress ("IIED"), Plaintiffs must allege that: "(1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) that the emotional distress was severe." *Harris v. Jones*, 281 Md. 560, 566 (1977). The tort of IIED "is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct . . ." *Williams v. Prince George's Cnty.*, 112 Md. App. 526, 555 (1996) (quoting *Batson v. Shiflett*, 325 Md. 684, 734–35 (1992)). Accordingly, an IIED claim is subject to a heightened pleading standard, and each element of the claim must be "pled with specificity." *Washington v. Maynard*, No. GLR-13-3767, 2016 WL

---

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

6

865359, at *10 (D. Md. Mar. 7, 2016) (citing *Foor v. Juvenile Servs. Admin.*, 552 A.2d 947, 959 (Md. Ct. Spec. App. 1989)).

Defendants argue that Plaintiffs' IIED claim does not meet the second and fourth prongs of the tort, *see, e.g.*, ECF Nos. 29-1 at 17; 35-1 at 10, and that use of force to make an arrest during a "felony stop" is not extreme and outrageous. *See* ECF No. 29-1 (citing *Munyiri v. Haduch*, 585 F. Supp. 2d 670, 677 (D. Md. 2008)). While the right to make an arrest "carries with it the right to use the amount of force that a reasonable officer would think necessary" *Munyiri*, 585 F. Supp. 2d at 677 (citing *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir.1988)), Plaintiffs allege that when they were mauled, tased, and/or thrown over a guardrail, they were complying with officers' instructions, and in the case of Thomas, under the officers' control. ECF No. 2 ¶¶ 119, 121. While discovery and/or trial may prove that the officers' conduct was reasonable, the Court has no basis to find that, as alleged, such conduct did not "go beyond all possible bounds of decency, and [should] be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 281 Md. at 567 (internal citation omitted).

Next, Defendants' argue that Plaintiffs have not "alleged the kind of severe emotional distress envisioned by the Maryland Court of Appeals as a necessary predicate to a claim for intentional infliction of emotional distress." ECF No. 35-1. To succeed on a claim of IIED, Plaintiffs must show that they "suffered a severely disabling emotional response to the defendant's conduct," and that the distress was so severe that "no reasonable man could be expected to endure it." *Thacker v. City of Hyattsville*, 135 Md. App. 268, 315 (citing *Harris*, 281 Md. at 570–71); *see also Bryant v. Better Business Bureau of Greater Md., Inc.*, 923 F.Supp. 720, 750 (D. Md. 1996) (plaintiffs only entitled to relief when the "emotional distress is so severe as to have disrupted [plaintiff's] ability to function on a daily basis.").

7

Here, Plaintiffs' claims of emotional distress are conclusory—Plaintiffs make no allegations that they sought medical treatment for their distress or that their distress has impacted their lives in a meaningful and particularized way. *See Karn v. PTS of America, LLC*, No. GJH-16-3261, 2017 WL 4162251, at *5 (D. Md. Sept. 19, 2017) (finding that plaintiff failed to show a severely disabling condition when plaintiff has not alleged that he required psychological treatment, was hospitalized for mental anguish, or that he was no longer able to work or function normally); *Robinson v. Cutchin*, 140 F. Supp. 2d 488, 494 (D. Md. 2001) (no severely disabling emotional response when plaintiff was not treated by a physician or hospitalized because of her emotional condition). As such, Plaintiffs' IIED claim fails to meet the high burden imposed by Maryland courts that their emotional distress be severe and is therefore dismissed. *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 368–69 (2000).

### C. Equal Protection, 42 U.S.C. § 1983 (Count VIII) and Conspiracy to Interfere with Civil Rights, 42 U.S.C. § 1985(3) (Count V)

To succeed on an equal protection claim, Plaintiffs must allege facts sufficient to demonstrate that, as a result of purposeful or intentional discrimination, they were treated differently than other similarly situated individuals. *Veney v. Wyche*, 293 F.3d 726, 731 (4th Cir. 2002). Plaintiffs' claim fails on its face because Plaintiffs have not alleged that they are in a protected class. Nor have Plaintiffs alleged any acts of discrimination. *See Lynn v. O'Leary*, 264 F. Supp. 2d 306, 311 (D. Md. 2003) (dismissing equal protection claim where the plaintiff failed to plead allegations of discriminatory purpose or motive). In response to the motions to dismiss, Plaintiffs argue that Thomas, "a person assumed to have committed a criminal act, was treated differently than other persons similarly situated," and Curbelo, "a mere passenger in a vehicle being driven on a highway, was treated differently than other persons similarly situated," ECF No. 49 at 19, and contend the Court should infer that Plaintiffs are members of a "class of one" even though Plaintiffs' protected status was not expressly alleged in the Complaint. *Id.* (citing

8

*Willowbrook v. Olech*, 528 U.S. 562, 565 (2000)). Such an inference does not arise from the allegations in the Complaint. While Plaintiffs' Complaint alleges facts to suggest that they were subject to abusive treatment, the Complaint alleges no facts to suggest that they were subject to *disparate* treatment.

Similarly, to state a viable claim for conspiracy under 42 U.S.C. § 1985(3), Plaintiffs must show: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). At the outset, because there has not been an allegation of a specific class-based discriminatory animus, the claims for conspiracy under § 1985(3) must also fail. *Simmons*, 47 F.3d at 1376.

Separate from whether an underlying constitutional violation occurred, Plaintiffs' also fail to adequately plead any conspiracy or associated overt act. "[M]erely conclusory allegations of conspiracy, unsupported by a factual showing of participation in a joint plan of action, are insufficient to support a section 1985(3) action." *Id.* While Plaintiffs allege that various unnamed officers engaged in a conspiracy to use excessive force, not report officers using excessive force, and falsify police reports, ECF No. 2 ¶ 95, the only factual allegation supporting the claim is that an unnamed supervisor told a subordinate officer that he would "take care of the police report." *Id.* ¶ 57. Moreover, the Complaint is devoid of any facts suggesting that any police reports were in fact falsified. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support Plaintiffs' conspiracy claim. *See Iqbal*, 556 U.S. at 678. Counts VIII and V are dismissed as to all Defendants.

### D. Claims Against Individual Police Officers

Plaintiffs bring their claims against 28 individual police officer but only allege facts related to the actual conduct of two officers, Rothenbecker and Duncan. *See* ECF No. ¶¶ 42, 44 (alleging Rothenbecker as responsible for the use of the police canine and Duncan for use of the Taser). As clarified by Defendants, Rothenbecker is currently a police officer with the Anne Arundel County Police Department, and Duncan is a former police officer with the Howard County Police Department. ECF No. 29-1 at 1. Neither of the two joins any of the motions to dismiss herein.

#### 1. Intentional Torts and Constitutional Violations (Counts I, II, III, V, VI, VII, VIII, X)

Defendants argue that Plaintiffs, in "lump[ing] together the patrol officer defendants," cannot attribute any specific conduct to the remaining individual officers and therefore fail to plead facts to "allow the court to draw the reasonable inferences that *the defendant* is liable for the misconduct alleged." *See* ECF No. 29-1 at 9 (citing *Iqbal*, 556 U.S. at 678) (emphasis in ECF No. 29-1); *see also Vinnedge v. Gibbs*, 550 F.2d 926, 928–29 (4th Cir. 1977) (noting that for § 1983 claims, plaintiffs must allege a "personal connection" between each individual defendant and the violation of a constitutional right). In opposition to the motions to dismiss, Plaintiffs indicate that subsequent to removal, they have been able to "ascertain with greater specificity as to which officers were involved in the direct brutalization of Plaintiffs, which officers failed to intervene to prevent the brutalization to Plaintiffs, and the supervising officers who are believed to have been involved with the remaining accusations." ECF No. 49 at 8. However, Plaintiffs have not moved to amend their Complaint based on this information, and the allegations as set forth in their Complaint fail to provide enough specificity to put the individual officers on sufficient notice of the possible claims against them.

Plaintiffs argue that attributing all claims to all 28 individual police officers through "group pleading" is sufficient to state a plausible claim for relief in advance of discovery. ECF No. 49 at 9. In support of their arguments, Plaintiffs cite to *J. A. v. Miranda*, No. PX-16-3953, 2017 WL 3840026, at *3 (D. Md. September 1, 2017) where the Court noted that "Rule 8(a) is not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer." But unlike the defendant officers in *Miranda*, Plaintiffs are unable to identify even a limited group of officers actually responsible for the alleged harms. Rather, Plaintiffs seemingly list every possible officer they can find, potentially including officers that were not present on the scene or omitting others that were. Such an approach falls short of that which is required to overcome a motion to dismiss. *See Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 744 (D. Md. 2008) ("At worst, the repeated refrain that all three individuals committed each and every act must be read as an allegation that one of the three did each act, an assertion that amounts to speculation and which is deficient under *Twombly*.").

Regardless, even if Plaintiffs were able to assign specific names responsible for these alleged "brutalizations," Plaintiffs only allege vague and conclusory statements supporting claims of battery and excessive force against all officers other than Rothenbecker and Duncan. *See Calhoun v. Prince George's County, Md.*, No. DKC-12-2014, 2013 WL 2873224, at *3 (D. Md. July 24, 2013) (dismissing excessive force claim where complaint fails to differentiate amongst three individual officers and merely alleges that plaintiff was "beaten about the head, body, and limbs"); *see also Dale v. Mayor*, No. WDG-14-2152, 2015 WL 5521815, at *9 (D. Md. Sept 15, 2015) (dismissing battery claims because "complaint does not identify which of the many police officers in the complaint committed these alleged batteries, when they occurred, or

11

how they occurred").[5] Therefore, Counts I, II, III, V, VI, VII, VIII, and X are dismissed as to all individual police officers other than Rothenbecker and Duncan.

### 2. Negligence Torts (Counts IV and IX)

Public officials, including police officers, are protected by common law immunity from liability for tortious conduct that occurred while performing discretionary acts within the scope of his or her official duties. *See Houghton v. Forrest*, 412 Md. 578, 585 (2010) (noting that an arrest by a police officer is a discretionary act within the scope of his or her official duties). For negligence torts, County police officers are also protected by statutory immunity pursuant to § 5-507(b) of the Courts and Judicial Proceedings Article of the Maryland Code. *See Lovelace v. Anderson*, 366 Md. 690, 704 (2001) (noting that this provision codifies existing public official immunity under common law); *see also Houghton*, 412 Md. at 586 (common law public immunity does not apply to intentional torts). As such, Counts IV and IX must be dismissed as to all individual police officers other than Rothenbecker and Duncan.[6]

### E. Claims Against County Defendants

#### 1. State Tort Claims (Counts I, II, IV, IX, X)

County Defendants enjoy immunity from tort liability arising out of functions characterized as "governmental," such as running and supervising a police department. *Nam v. Montgomery County*, 127 Md. App. 172, 182–84 (1999) (also noting that the Local Government Tort Claims Act does not provide a waiver of governmental immunity for tortious acts of a

---

[5] Plaintiffs also fail to allege any specific injuries sustained from Anne Arundel County Police Officer Helicopter Pilot "John Doe," and the Complaint offers no suggestion as to how a helicopter pilot could have contributed to any of the alleged harms. *See* ECF No. 2 ¶ 23. Moreover, Maryland does not authorize pleadings against fictitious persons. *Nam v. Montgomery County*, 127 Md. App. 172, 185 (1999).

[6] Plaintiffs attempt to re-classify their negligence claims as "a cause of action for gross negligence or for torts committed with malice" in an effort to bypass public official immunity. ECF No. 49 at 11–12. However, Plaintiffs have not indicated how such claims are different from the intentional torts and constitutional violations otherwise alleged, and the Court will not construe the Complaint to include these additional claims. *See Jeffries v. Wal-Mart Stores E., LP*, No. GJH-15-473, 2016 WL 430479, at *4 (D. Md. Feb. 3, 2016) (quoting *Zachair Ltd. v. Driggs*, 965 F.Supp. 741, 748 n. 4 (D. Md. 1997) ("[A] plaintiff 'cannot, through the use of motion briefs, amend the complaint.'").

county's agents or employees); *see also Clark v. Prince George's Cnty.*, 211 Md. App. 548, 558–59 (2013) (holding that county could not be sued for common law tort liability, including torts of negligent hiring, retention, or entrustment, arising out of actions of defendant police officer). Moreover, there can be no *respondeat superior* liability for the intentional malicious conduct of individual employees, including IIED, because such torts "can never be considered to have been done in the furtherance of the beneficent purposes" of the County Defendants. *See James v. Frederick County Public Schools*, 441 F. Supp. 2d 755, 760–761 (citing *Hunter v. Board of Educ. of Montgomery County*, 292 Md. 481, 491 n.8 (1982)). Therefore, Plaintiffs state tort claims against County Defendants fail.[7]

### 2. Constitutional Claims (Counts III, V, VII, VII)

Similar to the intentional malicious conduct of individual employees, there is no doctrine of *respondeat superior* in § 1983 actions, and the County Defendants cannot be liable for the alleged constitutional violations of their police officers. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691 (1978) ("we conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). County Defendants are only subject to liability if Plaintiffs' constitutional violations were the result of an unconstitutional policy, practice, or custom employed by the County Defendants. *See Monell*, 436 U.S. at 690–91.

---

[7] While Plaintiffs concede dismissal of all claims against the County Executives and police departments, Plaintiffs do not concede dismissal of any claims against Howard County Police Chief Gary Gardner and Anne Arundel County Police Chief Timothy Altomare. However, Plaintiffs do not allege any affirmative conduct of the police chiefs and fail to state a claim against them in their individual capacities. *See Baltimore City Police Dep't v. Cherkes*, 140 Md. App. 282, 333–34 (2001); *see also Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (supervisor liability requires a showing that the supervisor was deliberately indifferent to the constitutional violations). To the extent that the police chiefs are sued in their official capacities, these claims are duplicative with the claims against the County Defendants and will suffer the same fate. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citing *Monell*, 436 U.S. at 690 n.5 (an official capacity suit against a government official is effectively a suit against the government entity itself)).

To establish this associated *Monell* claim, Plaintiffs must "(1) identify the specific policy or custom at issue; (2) fairly attribute the policy and fault for its creation to the municipality; and (3) prove the necessary affirmative link between the identified policy or custom and specific violation." *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987). Plaintiffs assert a litany of allegedly unconstitutional practices by County Defendants, ECF No. 2 ¶¶ 100a–o, but have not alleged any facts to suggest that such practices were created by, supported by, or evident to the County Defendants. At best, Plaintiffs have pled an isolated incident potentially giving rise to a constitutional violation. *See Lanford v. Prince George's Cnty.*, 199 F. Supp. 2d 297, 305 (D. Md. 2002) (dismissing *Monell* claim where plaintiff "provided no allegations, except those surrounding his own arrest or injury"). But mere conclusory statements that police officers were acting pursuant to such policies, or that such policies even exist, are insufficient to support municipal liability under *Monell*. *See Lee v. O'Malley*, 533 F. Supp. 2d 548, 553 (D. Md. 2007); *see also Milligan v. City of Newport News*, 743 F.2d 227, 229–30 (4th Cir. 1984) ("[A] municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees."). As such, Plaintiffs do not have a viable claim under § 1983 against County Defendants.

### 3. Article 24 Claim (Count VII)

In asserting their claim under Article 24 of the Maryland Declaration of rights, Plaintiffs reiterate the same allegations made in support of their claims under the U.S. Constitution. *See* ECF No. 2 ¶¶105–108. Such claims are identical as Article 24 is read *in pari materia* to the Fourteenth Amendment. *Williams*, 112 Md. App. at 548; *see also Okwa v. Harper*, 360 Md. 161, 203–205 (2000) (noting that equal protection claims are impliedly guaranteed through Article 24 and that excessive force claims brought under Article 24 or Article 26 are judged under the Fourth Amendment's "reasonableness standard"). Because Plaintiffs have not brought viable

equal protection, conspiracy, or *Monell* claims pursuant to § 1983 and § 1985(3), such claims are not viable under Article 24.

However, unlike Plaintiffs' § 1983 claims, a local government can be held liable for the State Constitutional torts of its employees. *See DiPino v. Davis*, 354 Md. 18, 51–52 (1999) ("We shall now dispel any doubt in the matter and make clear, as a matter of common law, that local governmental entities do, indeed, have *respondeat superior* liability for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of the employment."); *see also* ECF No. 29-1 at 20 (citing *Ashton v. Brown*, 339 Md. 70, 112 (1995) (Defendants acknowledging *respondeat superior* liability for State Constitutional violations)).

County Defendants argue that because Plaintiffs fail to identify a county actor "who purportedly used excessive force in arresting them," Plaintiffs' Article 24 claim must fail. ECF No. 29-1 at 19; ECF No. 54 at 3. While true for the individual officers who have joined the motions to dismiss submitted by the County Defendants, Plaintiffs' excessive force claim against Rothenbecker and Duncan, who were employed by the County Defendants at the time of the subject arrest, remain. Therefore, Plaintiffs' Article 24 claim against the County Defendants, as related to the alleged use of excessive force by Rothenbecker and Duncan, cannot be dismissed at this time.

### F. Claims Against the State of Maryland

Finally, Plaintiffs bring their claims against the State of Maryland, including the Maryland State Police ("MSP"), Governor Larry Hogan, Secretary of the Maryland State Police Col. William Pallozzi, and three individual Maryland State Police Officers.[8] Because Plaintiffs

---

[8] The individual MSP officers listed have not been served and are not, nor ever were, MSP employees. ECF No. 45-1 at 11. While Plaintiffs argue that they have obtained police reports and radio logs "demonstrating that Maryland State Police officers were involved with the underlying chase and that at least one Maryland State Police Officer

15

have not alleged any specific acts or omissions by the State of Maryland, or any of its employees, Plaintiffs claims must be dismissed. The claims cannot survive for a number of additional reasons, as set forth below.

First, the State of Maryland itself is immune from suit in federal court under the Eleventh Amendment. U.S. Const. amend. XI. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). The State of Maryland has expressly waived its sovereign immunity as to tort actions in *state* court subject to certain conditions set forth in the MTCA. *See* MD Code, State Govt., § 12-104. *See also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 n.9 (1984) ("a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts"). As such, Maryland's waiver of sovereign immunity does not apply in this case.

Second, Plaintiffs have not complied with the requirements of the MTCA necessary to bring their tort claims in state court. At the time of Plaintiffs' arrest, on June 3, 2014, the MTCA provided that a claimant may not institute a tort action against the State unless the claimant submits a written claim to the Treasurer within one year after the injury occurred. *See* MD Code, State Govt. § 12-106(b)(1) (1995); *see also Condon v. State*, 332 Md. 481, 485–86 (1993) ("The Maryland Tort Claims Act ... waives the State's immunity from tort liability in certain cases, but requires that a claim first be filed within a designated time period with the State Treasurer as a prerequisite to initiating a lawsuit against the State."). Plaintiffs do not dispute that they failed to make timely notification to the Treasurer but instead argue that they "substantially complied"

---

was directly involved in subduing [Thomas]," ECF No. 51 at 8, such facts are not alleged in the Complaint. Regardless, the claims against any additional un-named MSP officers must be dismissed for the same reasons that these claims are dismissed against the individual County police officers who have joined the motions to dismiss herein.

with the requirements of the MTCA or, alternatively, that the State of Maryland had actual or constructive notice of their claim. ECF No. 51 at 5–9. However, Plaintiffs also failed to make this argument in a timely manner. Pursuant to Local Rule 105(2)(a), Plaintiffs had fourteen days to respond to the State of Maryland's Motion to Dismiss, filed on October 13, 2017. ECF No. 45. Plaintiffs' Opposition, ECF No. 51, was filed on November 2, 2017, approximately one week late. The State of Maryland moves to strike Plaintiffs' Opposition as untimely, ECF No. 56, to which Plaintiffs have not replied. Having received no request for leave of court to excuse the late filing, or an explanation for the late filing, the Court will strike Plaintiffs' Opposition.[9]

Third, Plaintiffs do not state a viable claim against the MSP, Governor Hogan, or Col. Pallozzi. The MSP is a principal department of the State Government, Md. Code, Pub. Safety, § 2-201, and a suit against the MSP is a suit against the State itself. As such, MSP lacks the capacity to be sued. *See Owens v. Baltimore City State's Atty's Office.*, 767 F.3d 379, 393 (4th Cir. 2014) (citing *Boyer v. State*, 323 Md. 558, 594 n.1 (1991)). And like the County Police Chiefs, state personnel are immune from liability for tortious conduct committed within the scope of their public duties without malice or gross negligence. Md. Code Cts. & Jud. Proc. § 5-522(b). This immunity applies to both intentional torts and constitutional torts. *See Lee v. Cline*, 384 Md. 245, 257 (2004). The Complaint does not attribute any acts or omissions to either Governor Hogan or Col. Pallozzi suggestive of an act of malice or gross negligence necessary to overcome immunity, or even personal knowledge or involvement with the circumstances surrounding Plaintiffs' arrest. As such, claims against these officials in their individual capacities must be dismissed. To the extent that they are sued in their official capacities, those claims are again duplicative with those against the State of Maryland and must also be dismissed.

---

[9] Even if the Court accepts Plaintiffs' untimely Opposition, the Court will not excuse Plaintiffs' failure to make a timely notification under the MTCA. Plaintiffs have not identified any case law whereby a Maryland court has applied the doctrine of substantial compliance to excuse an untimely notification made under the MTCA or allowed a plaintiff to rely on constructive notification in lieu of complying with the MTCA.

## IV. CONCLUSION

For the foregoing reasons, Howard and Anne Arundel Counties' motions to dismiss, ECF Nos. 29, 30, 31, 35, shall be granted, in part, and denied, in part. Prince George's County's Motion to Dismiss, ECF No. 36, shall be denied as moot. The State of Maryland's Motion to Dismiss, ECF No. 45, and Motion to Strike Plaintiff's Opposition brief as time-barred, ECF No. 56, shall be granted. A separate Order follows.

Dated: December 20, 2017

GEORGE J. HAZEL
United States District Judge